FILED

2011 Nov-01  AM 11:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **MICHAEL DAVID ROSE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:11-CV-1186-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

Plaintiff Michael David Rose (hereinafter "Mr. Rose") brings this action pursuant to Title XVI of the Social Security Act ("the Act"). He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits. Mr. Rose timely pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g) of the

Social Security Act.[1]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Rose was a 48-year-old male who had received his GED at the time of the 2010 hearing before the administrative law judge (hereinafter "the ALJ"). (Tr. 33, 128). His past relevant work was as a heavy equipment operator, a band saw operator, and a working foreman in construction. (Tr. 34, 36-37, 39, 52-53, 122). Mr. Rose claims to have become disabled on May 15, 2008, due to a broken neck with plates and screws inserted, right and left shoulder injuries, collarbone injuries, back problems, torn menisci in right and left knees, umbilical hernia surgery, and resulting pain in neck, shoulders, back, and knees. (Tr. 121).

Mr. Rose filed an application for Title II DIB on June 8, 2009. (Tr. 14). The claim was denied by the Commissioner on September 17, 2009. (Tr. 57). Mr. Rose filed a timely written request for a hearing on October 8, 2009. (Tr. 14). The hearing was held via video conference on January 12, 2010. *Id.* The ALJ concluded that Mr. Rose was not disabled and denied his application on April 6, 2010. (Tr. 23). Mr.

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI under the Act. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion that may relate to DIB claims should be considered to refer to the appropriate parallel SSI related authority. The same applies to citations of statutes or regulations found in quoted court decisions.

Rose timely requested a review of the ALJ's decision on June 2, 2010. (Tr. 10). The Appeals Council denied Mr. Rose's request for review on February 4, 2011. (Tr. 1). The ALJ's decision thus became the Commissioner's final decision on that date. *Id*.

Mr. Rose filed a Complaint on April 6, 2011, which asks this court to review the ALJ's decision. (Doc. 1). Mr. Rose also filed a motion for leave to proceed *in forma pauperis* on April 6, 2011. (Doc. 2). This court granted the request to proceed *in forma pauperis* by margin entry on April 7, 2011. This court has carefully considered the record and, for the reasons stated below, reverses the decision of the ALJ.

## STANDARD OF REVIEW

This court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability

---

[2]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through October 6, 2011.

benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)   whether the claimant can perform her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *accord, Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord, Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers. *Phillips*, 357 F.3d at 1239.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

Following the five-step evaluation related above, the ALJ concluded that Mr. Rose is not disabled under the Act.  The ALJ found that the claimant has not engaged in substantial gainful activity since the alleged onset date, satisfying Step One.  (Tr. 16).  The ALJ found that the claimant has the following severe impairments: degenerative disc disease, degenerative joint disease, history of rotator cuff tear, hypertension, and mild ischemic heart disease, satisfying Step Two.[3]  *Id*.  The ALJ found that these impairments, when considered individually or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 of the Regulations.  *Id*.  Since Mr. Rose did not qualify as disabled pursuant to Step Three, the ALJ made a determination as to the claimant's residual functional capacity ("RFC"), finding that he has the RFC "to perform light work as defined in 20 C.F.R. § 404.1567(b)[4] except limited to occasional overhead lifting and

_____

[3] A severe impairment is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine

no exposure to fumes and dust." (Tr. 17).

The ALJ found that the claimant is unable to return to his past relevant work as a heavy equipment operator, band saw operator, or superintendent of cable installation, satisfying Step Four. (Tr. 22). Relying upon testimony from a vocation expert in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, the ALJ concluded that, considering the claimant's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that the claimant could perform. *Id*. Examples of such jobs include Assembler (5,500 jobs in Alabama), Inspector/Checker (4,300 jobs in Alabama), and Machine Packer (2,400 jobs in Alabama). (Tr. 23). Accordingly, the ALJ concluded that Mr. Rose was not disabled as defined by the Act, and denied his DIB claim. *Id*.

The ALJ gave great weight to the opinion of Dr. Morton Rickless, a specialist in orthopedic care, program medical expert, and consultative physician who examined Mr. Rose on one occasion. (Tr. 21-22). Neither Dr. Rickless nor any treating physician offered an opinion of Mr. Rose's RFC. (Tr. 21).

---

that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## ANALYSIS[5]

The court has carefully reviewed the record and finds that this case should be remanded for further development of the record.  Under the law, the administrative law judge must develop a full and fair record.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Under the instant circumstances, the evidence in the record is not substantial to support the ALJ's conclusion that Mr. Rose is not disabled and can perform reduced light work because:  (a) the ALJ's negative credibility finding in regard to Mr. Rose's subjective pain testimony is not supported by substantial evidence; (b) the record contains no medical source statement(s)[6] ("MSS") from Mr. Rose's treating physician referencing his functional abilities or limitations; and (3) the ALJ's unsubstantiated negative credibility finding resulted in a hypothetical

---

[5]The following analysis and disposition persuasively flow from the undersigned's opinions in *Clemmons v. Astrue*, No. 3:06-CV-1058-VEH (N.D. Ala. Jun. 11, 2007), and *Malone v. Astrue*, No. 5:07-CV-2351-VEH (N.D. Ala. Jul. 24, 2008).

[6]Medical source statements are "medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.  Medical source statements are to be based on the medical sources' records and examination of the individual; *i.e.*, their personal knowledge of the individual. Therefore, because there will frequently be medical and other evidence in the case record that will not be known to a particular medical source, a medical source statement may provide an incomplete picture of the individual's abilities." SSR 96-5p.

question to the vocational expert that failed to contain all of the claimant's established limitations and capabilities.  While the court has endeavored to separate the issues into their respective subparts, it recognizes the overlap and interrelated nature of these findings.

### 1. The ALJ's credibility finding is not based on substantial evidence.

Mr. Rose argues he meets the Eleventh Circuit's pain standard, and the ALJ's contrary decision is not supported by substantial evidence.  (Doc. 8 at 13).  The court agrees.  More specifically, the ALJ's decision that Mr. Rose does not meet the pain standard is based on an erroneous negative credibility finding as to Mr. Rose's subjective pain testimony.  (Tr. 21).

The pain standard "applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  This standard requires evidence of an underlying medical condition and (1) objective medical evidence confirming the severity of the alleged pain or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  A claimant's statements about pain or other symptoms do not alone establish disability. *See* 20 C.F.R. *§§* 404.1529(a), 416.929(a).  Instead, medical signs and laboratory findings must depict

9

medical impairments that could reasonably be expected to produce the claimant's alleged symptoms. *See id.*; *see also Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551 (11th Cir. 1986)). Even if a claimant meets the pain standard, the ALJ may then evaluate the intensity, persistence, and limiting effects of the alleged symptoms, such as pain. *See* 20 C.F.R. § 404.1529(c)(1).

Applying this standard to the present case, the ALJ correctly found that medical signs and laboratory findings depict medical impairments that could reasonably be expected to produce the alleged symptoms. (Tr. 21). However, the ALJ determined "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id*. As explained *infra*, the court finds that the ALJ's determination was not supported by substantial evidence and the ALJ's reasons for discrediting the claimant's statement, while explicit, were not adequate as a matter of law.

The ALJ may reject a plaintiff's complaints of pain if he finds them not credible. *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992). However, if the ALJ discredits a claimant's testimony regarding the severity of her symptoms, that determination must be supported by substantial evidence. *Id.; see also Doughty v.*

10

*Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (the Commissioner's factual findings must be supported by substantial evidence).

Furthermore, the ALJ may not reject the claimant's statements as to the intensity and persistence "solely because the available objective medical evidence does not substantiate [a claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* SSR 96-7p.[7]  Instead, the ALJ is bound to consider other evidence, in addition to the objective medical evidence, because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone."  20 C.F.R. § 404.1529(c)(3).  This "other evidence" includes statements made by the claimant in testimony during administrative hearings concerning the claimant's restrictions, daily activities, frequency and intensity of symptoms, any precipitating and aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the symptoms.  *See* 20 C.F.R. *§§* 404.1529(c)(3) and 416.912(b)(3).  Using these "other evidence" factors, the ALJ must show substantial evidence supporting his attempt to discredit the claimant's pain testimony.  *Id*.

The ALJ articulated two statements in Mr. Rose's testimony that supposedly

---

[7]Although they lack the force of regulations, Social Security Rulings are "binding on all components of the Social Security Administration."  20 C.F.R. § 402.35(b)(1); *see also McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th Cir. 2006), 2006 WL 177576 (citing SSR 96-6p as authoritative, for example).

11

conflict with prior claims the plaintiff submitted to the record, writing, "the claimant reported he cannot lift over two to three pounds, but testified he can lift 10 pounds bilaterally.  He reported he shops for food [], but testified his wife does the grocery shopping.  Therefore, the claimant's credibility has been further diminished."  (Tr. 21).  The report to which the ALJ refers is a questionnaire the claimant filled out by hand, titled "Function Report - Adult" ("Report").  (Tr. 148-55).  The court finds that this analysis by the ALJ is not merited by the various statements in their original context.

### a. Lifting Statements

Question 19.a of the Report asks the claimant to check the boxes beside various tasks "that [his] illnesses, injuries, or conditions affect." (Tr. 153).  Mr. Rose checked the boxes beside "Lifting," "Squatting," "Bending," "Standing," "Reaching," "Walking," "Sitting," "Kneeling," and "Stair Climbing."  *Id*.  The question goes on to ask, "Please explain how your illnesses, injuries, or conditions affect each of the items you checked." *Id*.  Mr. Rose wrote, "I can't lift over 2-3 pounds, even that is painful, can't do any of it without pain."  *Id.*

At the hearing, the ALJ asked Mr. Rose, "With your left hand, how much do you think you could pick up without having pain to a point that would distract you?"

(Tr. 43).  Mr. Rose replied, "If the pressure was on my shoulder, probably ten pounds." *Id*.  Mr. Rose further stated, "both my shoulders...hurt about the same." *Id*. The ALJ then asked "does it hurt more to lift overhead or...at your shoulder level without too much pain?" *Id*.  Mr. Rose replied, "Definitely....If something is heavier, I can rest my arm on my knee or something.  But, yeah, if I–any, anything shoulder–if I have to lift it out...it's a lot of pain, Your Honor."  (Tr. 43-44).

These two statements by Mr. Rose do not conflict in the way the ALJ opines, as they are answering different questions.  Mr. Rose's testimony describes two different types of "lifting," one where there is simply pressure on his shoulder and one where he is lifting above his shoulder level.  Although the Report does not indicate whether Mr. Rose could not lift two to three pounds with his shoulders or above his shoulder level, the ALJ assumes the former. The latter, however, is more likely because it resolves any supposed inconsistencies.  In summary, Mr. Rose wrote "I can't do any of it without pain" and testified "anything...if I have to lift it out...it's a lot of pain."  (Tr. 153, 44).  The court finds no conflict between these statements.

### b. Shopping Statements

Question 15 of the Report asked, "a. If you do any shopping do you shop: *(Check all that apply)*," with options "In stores," "By phone," "By mail," "By

computer." (Tr. 151).  Mr. Rose checked "In stores."  *Id*.  Next to "b. Describe what you shop for," the claimant wrote, "Food."  *Id*.  Finally, to the questions "c. How often do you shop and how long does it take?" he wrote "2 times per month" and "about 15-20 minutes."  *Id*.

At the hearing, the ALJ asked the claimant, "When it comes to lifting things around the house, do you go do any of the grocery shopping?" (Tr. 43).  The claimant testified, "Usually my wife does that."  *Id*.  Once again, this testimony is consistent with the Report answers, as they speak to different questions.  No evidence suggests that all of the claimant's household groceries are bought in fifteen- to twenty-minute, semi-monthly trips.  "Shopping in stores for food" at such intervals is not necessarily the "grocery shopping" that the claimant testified that his wife usually does.  Therefore, the court finds no conflict between these statements.

Accordingly, the ALJ's testimonial inconsistency finding is erroneous.

**2. The record contains no MSS from Mr. Rose's treating physician.**

While Mr. Rose has the burden of proving his disability, the ALJ has a basic obligation to develop a full and fair record.  *Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)).  When the ALJ has failed to develop a full and fair record, the court "has required the

Secretary to reopen the case 'until the evidence is sufficiently clear to make a fair determination as to whether the claimant is disabled or not.'" *Thorne*, 607 F.2d at 220 (quoting *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974)).

In *Thorne*, as in the instant case, there was no medical opinion provided by a treating physician as to whether the plaintiff's condition made her unemployable. *Id*. The only medical opinion regarding Mr. Rose's functional capabilities was provided by the consultative physician, Dr. Rickless, who is not a treating physician and only saw the claimant one time.[8]   (Tr. 244-49).  "Neither counsel nor the ALJ made any effort" to ascertain an opinion regarding the claimant's functional capabilities or limitations from a treating physician.  *Thorne*, 607 F.2d at 220.

In its brief, the Commissioner contends that because the ALJ's RFC finding is supported by Dr. Rickless's opinion, it is adequate.  (Doc. 9 at 10).  Dr. Rickless's MSS is "based on [his] records and examination of the individual." SSR 96-5p. However, "because there will frequently be medical and other evidence in the case record that will not be known to a particular medical source, a medical source

---

[8]This opinion from Dr. Rickless was later incorporated into a state agency functional assessment. (Tr. 244-49, 250-57).  The overall assessment was completed by a non-examining DDS specialist, Ms. Nicole Williams.  This assessment was based in part upon the results of Dr. Rickless's examination of Mr. Rose.

statement may provide an <u>incomplete picture</u> of the individual's abilities." *Id*. (emphasis added).

In his MSS, Dr. Rickless mentions but does not address Mr. Rose's subjective pain complaints. (Tr. 244, 247). As such, Dr. Rickless is unclear in his MSS as to what, if any, credence he gave to Mr. Rose's complaints of disabling pain. *Id*. As noted in footnote 8, *supra*, he did not fill out a complete physical residual capacities evaluation but rather submitted his limited MSS to the state agency representative, who then filled out the full capacities evaluation. *Id*.; (Tr. 250-57). Dr. Rickless's conclusion that Mr. Rose could perform light work and the ALJ's reliance upon that conclusion are problematic because Dr. Rickless does not explain what, if any, weight he gave to Mr. Rose's subjective pain complaints. This substantially weakens any reliance on Dr. Rickless's conclusion regarding Mr. Rose's ability to do the work he describes, which includes no limitations in sitting; standing and walking for reasonable periods of time; and lifting and carrying "light objects." (Tr. 248-49). The court is not making a judgment as to whether the ALJ should have discounted Dr. Rickless's MSS, as that is within his discretion. *See* SSR 96-5p; *also Malone v. Astrue*, No. 5:07-CV-2351-VEH (N.D. Ala. Jul. 24, 2008). However, the ALJ's decision to rely upon it, given the claimant's detailed subjective complaints of pain and in the absence of any MSS from the claimant's treating physician regarding his

16

opinion about his work-related functional limitations, does not provide substantial evidence to support the ALJ's RFC finding. *See Malone v. Astrue*, No. 5:07-CV-2351-VEH (N.D. Ala. Jul. 24, 2008).

This court recognizes the Eleventh Circuit's view that "the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work." *Clemmons v. Astrue*, No. 3:06-CV-1058-VEH, slip op. at 11 (N.D. Ala. Jun. 11, 2007) (discussing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Clemmons*, slip op. at 11 (citing *Lamb*, 847 F.2d at 703). This court has similarly noted, "where the treating physician has not discharged the patient from treatment and the physician has not made, and was not asked to make, a determination regarding plaintiff's functional capabilities, there is no substantial evidence to support an ALJ's functional capacity finding." *Clemmons*, slip op. at 11 (citing *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001)).

As this court noted in *Malone*, neither the Eleventh Circuit nor this court has adopted a bright line test to determine whether the lack of a treating physician's MSS as to a claimant's functional ability calls for a remand. In some cases, a treating physician's MSS is necessary. *See, e.g., Coleman v. Barnhart*, 264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003); *Clemmons*, *supra*. In others, it is not. *See, e.g., Green v.*

17

*Social Security Administration*., 223 Fed. Appx. 915, 923 (11th Cir. 2007) (ALJ discounted a treating physician's opinion regarding claimant's functional abilities and limitations, but there otherwise remained substantial evidence to find the claimant not disabled); *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (lack of a treating physician's medical opinion did not invalidate the ALJ's RFC finding because there existed substantial evidence, outside the objective medical evidence, supporting such); *Dudley v. Astrue*, No. 3:06-CV-1286-VEH (N.D. Ala. Apr. 24, 2007) (similar ruling); *Cash v. Astrue*, No. 5:07-CV-0952-VEH (N.D. Ala. May 15, 2008) (similar ruling).  In sum, the outcome of these cases turns upon the sufficiency *vel non* of other evidence in the record that supports the ALJ's disability determination even in the absence of a MSS from the claimant's treating physician. *Malone*, slip op. at 26.

While the lack of a treating physician's MSS does not always invalidate an ALJ's RFC finding, the court concludes that the omission does so in the instant case. As in *Malone*, the lack of such an opinion, combined with an evidentially unsupported negative credibility finding by the ALJ, is a cause for remand in the instant case. "Put differently, while an RFC is an administrative finding, the administration must have substantial evidence to make such a finding." *Malone*, slip op. at 26, (citing *Clemmons*).

In *Clemmons*, a case analogous to the instant case, this court further supported its opinion with a decision from the Southern District of Alabama, which noted:

> [t]his court has held on a number of occasions that the Commissioner's fifth-step burden cannot be met by a lack of evidence, or by the residual functional capacity assessment of a non-treating, reviewing physician, but instead must be supported by the residual functional capacity assessment of a treating or examining physician.

*Clemmons*, slip op. at 10 (citing *Coleman*, 264 F. Supp. 2d at 1010).

In the instant case, the most recent treating physician's opinion regarding Mr. Rose's non-extertional limitation of pain is the January 3, 2005, report of Orthopaedic Associates, L.L.P. (Tr. 293). The unnamed physician reported that Mr. Rose was permitted to return to work with restrictions, as his treatment was ongoing. *Id*. The dearth of objective medical evidence regarding Mr. Rose's pain between 2005 and 2010 is the silence "equally susceptible to either inference" referred to in *Clemmons*.

Both the ALJ's exclusive reliance upon Dr. Rickless's MSS and the ALJ's negative credibility finding are insufficiently supported, and therefore the ALJ's RFC conclusion is not based on substantial evidence. *See Malone*, at 28. A treating physician's MSS would provide the substantial evidence to either affirm the RFC determination or alter it. In the present case, the medical records of surgeries and treatments, dating back over several years, establish medically determinable

impairments that could reasonably be expected to cause the claimant's symptoms, but they shed no light on his functional capabilities or limitations. "'When the treating physician's medical opinions confirm the severe impairments yet are silent as to the all-important functional limitations' of [the claimant] ambiguity, causing unsubstantial evidence, arises." *Malone, citing Clemmons*, at 12. Accordingly, the ALJ's decision that Mr. Rose is not disabled is alternatively not supported by substantial evidence due to the absence of a MSS from Mr. Rose's treating physician as to his functional abilities and the ALJ's questionable, if not improper, negative credibility finding.

### 3. The ALJ did not pose a comprehensive hypothetical question to the vocational expert.

The ALJ posed two hypothetical persons to the vocational expert at the hearing. First, he asked the expert to "assume a hypothetical person same age, education, past work as the Claimant. And further assume that this person could perform a limited range of light work with only occasional overhead lifting...with no exposure to fumes, dust, or other irritants." (Tr. 53). The expert testified that there are jobs in significant numbers in the national and state economy for such a person. *Id*.

Regarding the second hypothetical person, the ALJ asked, "If you were to

assume the same person, and they had to sit down in a recliner three to four hours a day due to chronic pain, would they be able to perform any of those jobs?"  (Tr. 54). This "person" reflected the daily activities of which Mr. Rose testified he was capable.  (Tr. 42-50). The expert replied, "No, sir."  (Tr. 54).

In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which contains all of the claimant's impairments.  *Vega v. Comm. Of Social Security*, 265 F.3d 1072, 1077-78 (11th Cir. 1996).  In his decision, the ALJ clearly relied  upon the testimony regarding the first hypothetical person.  (Tr. 22-23, 53-54).  In light of the court's finding that the ALJ erroneously discredited the claimant's subjective pain testimony, and given that such discrediting was the basis for the first hypothetical person, the court finds that the ALJ did not pose a comprehensive hypothetical question to the vocational expert.

## <u>CONCLUSION</u>

In social security disability cases, the district court must review the ALJ's opinion and "determine whether its conclusion, as a whole, is supported by substantial evidence in the record."  *Foote*, 67 F.3d at 1558 (citing 42 U.S.C. § 405(g)).  Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is

not supported by substantial evidence.   Accordingly, the decision of the Commissioner is reversed and the case remanded.  42 U.S.C. § 405(g).[9]

On remand, the ALJ should fully develop the record by obtaining a MSS from Mr. Rose's treating physician.  Additionally, the ALJ should accord substantial or considerable weight to the functional capacities opinion of the treating physician or, alternatively, show good cause to the contrary.  Finally, based on a fully developed record, which includes a MSS from Mr. Rose's treating physician, the ALJ should re-evaluate Mr. Rose's credibility regarding his subjective complaints of pain and related limitations.  An order in conformity with this memorandum opinion will be entered.

**DONE**  and **ORDERED** this the 1st day of November, 2011.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[9]The fourth sentence of 42 U.S.C. § 405(g) states "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

22